IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:19-cv-736 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| TWO HUNDRED EIGHTY-FOUR THOUSAND NINE HUNDRED FORTY-TWO AND 00/100 DOLLARS ($284,942.00) IN UNITED STATES CURRENCY, | : : : : : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING CLAIMANT'S MOTION TO DISMISS (Doc. 8)**

This case is before the Court on Claimant Jerry J. Miller's Motion to Dismiss (Doc. 8). Miller moves to dismiss the Complaint (Doc. 1) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The Government filed a Response in Opposition (Doc. 18). Although Mr. Miller requested and received an extension of time to file a reply in support, he failed to file one and his time to do so (July 13, 2020) has passed. This matter is thus ripe for review.

**FACTS**

Shortly after midnight on April 6, 2019, an Ohio State Highway Patrol (OSHP) Trooper initiated a traffic stop after he observed Miller driving a Chevrolet Suburban 87 miles per hour in a 70 mile per hour zone in Wilmington, Ohio. When he approached the vehicle, the Trooper observed furtive movements by both Miller—the driver—and

his passenger. The Trooper quickly detected the strong odor of marijuana and noticed that Miller was acting "distant" and would not maintain eye contact. Instead, Miller kept repeatedly looking towards the vehicle's center console. When asked, Miller denied that there was any marijuana in the vehicle. This prompted the Trooper to direct Miller to exit the vehicle for further investigation. At this point, Miller admitted that there was a small amount of marijuana in the front dash console.

After placing Miller and his passenger in the back of his cruiser, the Trooper searched a law enforcement database and learned that Miller had an active warrant out for his arrest in Oregon for drug possession. Based on these circumstances, the Trooper felt prompted to conduct a search of the vehicle. He quickly located a jar of marijuana where Miller indicated it would be. But the Trooper also found an electronic money counting machine and a large amount of United States currency. The money was spewed throughout the Suburban. A large amount of it was found in bags in the second row of seats, while some was spilling out of a plastic bag in the center console. Nor was the money contained or packaged in any order. Some was bundled with rubber bands, some was open, some was vacuum sealed, and some was placed in zip lock plastic bags. When asked, Miller stated that the money was his and that he estimated there was "about 270" in the car (meaning $270,000).

While searching the vehicle, the Trooper noticed several vehicles dramatically slowing down as they approached the traffic stop. Knowing that individuals who transport bulk currency with narcotics often have more than one vehicle traveling with them as "tail vehicles," the Trooper requested back up. After additional troopers

arrived on the scene, the Trooper continued his search and found three cell phones, one of which rang multiple times from a number originating from California. He also found rental paperwork which showed that the vehicle had been rented by Miller's wife and had been driven more than 4,907 miles during the rental period, along with a one way plane ticket, in the passenger's name, from Cleveland to Los Angeles.

Based on this evidence, as well as his training and experience with drug interdiction, the Trooper suspected that the currency was related to a criminal enterprise. He decided to seize the vehicle and its contents and had the vehicle towed to OSHP's Wilmington post. He also contacted OSHP's Criminal Patrol Unit and advised the Commander about the traffic stop. The Commander, in turn, contacted the Cincinnati Drug Enforcement Agency (DEA) for guidance and direction. The DEA knew Miller as a multi-kilogram cocaine and marijuana dealer who had an open warrant and case in Oregon involving ten pounds of marijuana. DEA agents stayed in constant contact with OSHP throughout the traffic stop and agreed to meet with the Trooper, the Commander, the vehicle, and its occupants at the Wilmington Post.

At the Wilmington Post, the decision was made that the DEA would seize the currency. Investigators unlocked the Suburban, photographed the currency where it was found in the vehicle, and placed it into a DEA evidence bag. Investigators observed what appeared to be marijuana residue on the electronic money counter. The currency was then taken to the basement of the Wilmington Post where a trained narcotics detection K9 "Tao" conducted a controlled sniff. Tao showed a positive alert for the odor of narcotics on a locker that contained the currency.

3

DEA agents then informed Miller that the DEA was going to seize the currency. Miller was supplied with a receipt for the currency, the electronic money counter, two cell phones, and two storage locker identification cards, all of which had been seized from the Suburban. He was given the opportunity to sign the evidence bag containing the currency but declined. Miller was cited for speeding and a minor misdemeanor marijuana drug possession. Then he and his passenger were released.

The seized currency remained at the Wilmington Post for two days until the DEA retrieved it. Three days after that, on April 11, 2019, the DEA took the seized currency to a counting facility where an official count determined that it totaled $284,942.00. The next day, the currency was deposited into the Seized Asset Deposit Fund. The DEA timely initiated administrative forfeiture proceedings against the currency by sending notice to all potential claimants pursuant to 19 U.S.C. § 1607(a) and 18 U.S.C. § 983(a). Miller responded and asserted his ownership interest.

Meanwhile, however, on April 11, 2019, Miller filed a petition for the return of the seized currency in the Fayette County Court of Common Pleas (Case No. CVH 20190120). Three months later, the state court dismissed Miller's petition, finding that it lacked subject matter jurisdiction which, due to the DEA seizure, now vested exclusively in federal court. Ohio's Twelfth District Court of Appeals affirmed. *See Miller v. Ohio State Highway Patrol*, 2020-Ohio-3231, 2020 WL 3045976 (12th Dist. 2020).

Miller now seeks to dismiss this federal civil forfeiture action based on the same, or similar, reasons that he argued—and lost—in state court: (1) under Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction; and (2) under Fed. R. Civ. P

4

12(b)(6) and Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") because the Government has failed to state a claim upon which relief may be granted.

## LAW

### I. Lack of subject matter jurisdiction under Rule 12(b)(1)

"Subject matter jurisdiction defines the court's authority to hear a given type of case" and represents "the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations omitted). "Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction." *Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014) (*quoting Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted). Fed. R. Civ. P. 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. When a court lacks subject matter jurisdiction, dismissal is mandatory.

### II. Failure to state a claim in a civil forfeiture proceeding

In civil forfeiture cases, a motion to dismiss for failure to state a claim is governed by 18 U.S.C. § 983 and Rules G(8)(b)(ii) and G(2)(f) of the Supplemental Rules. *United States v. $506,069.09 Seized From First Merit Bank*, 664 F. App'x 422, 433 (6th Cir. 2016). Both 18 U.S.C. § 983(a)(3)(D) and Supplemental Rule G(8)(b)(ii) state that a "complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." *Id*. Rather, "[t]he sufficiency of the complaint is governed by Rule G(2)."

5

Supplemental Rule G(8)(b)(ii).

Rule G(2), in turn, establishes the requirements for an adequate civil forfeiture complaint, the last of which provides that "[t]he complaint must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supplemental Rule G(2)(f). As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations of material fact as true and construe them in the light most favorable to the non-moving party. *See $506,069.09*, 664 F. App'x at 433; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).

**ANALYSIS**

**I.  Subject Matter Jurisdiction**

Under 28 U.S.C. § 1345, federal district courts have "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." And under 28 U.S.C. § 1355, district courts have original jurisdiction over forfeiture proceedings. Both of these sections confer the Court with subject matter jurisdiction here. The United States commenced this action and seeks the in rem forfeiture of $284,942.00 in currency pursuant to 21 U.S.C. § 881(a)(6). (Doc. 1 at ¶ 1.) That section makes "all moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter" subject to forfeiture. 21 U.S.C. § 881(a)(6). Because this is a forfeiture action brought by the United States, the Court is satisfied that it has subject matter jurisdiction.

Miller, however, argues that this Court lacks jurisdiction on several grounds. Most of his arguments may be dismissed as merely inflammatory.[1] The Court will discuss the two arguments that are more substantial, even if not ultimately meritorious: (1) the currency was seized by an Ohio trooper, and (2) the "original action" was filed in State Court. Based on these facts, Miller reasons that jurisdiction must vest exclusively in Ohio state court. Miller is incorrect.

The fact that Miller was pulled over by an Ohio trooper is irrelevant because the DEA adopted the trooper's seizure of the currency for federal forfeiture. As the Government notes, "the doctrine of adoptive forfeiture is well recognized." *United States v. $16,757.00 in U.S. Currency*, No. 1:10CV1450, 2010 WL 5662092, at *4 (N.D. Ohio Dec. 22, 2010) (*citing United States v. Ford Coupe Auto.*, 272 U.S. 321 (1926)) (holding that the United States may adopt seizure of property forfeitable under federal law even if seized by a local official or one with no authority to make the seizure); *Madewell v. Downs*, 68 F.3d 1030, 1037–38 (8th Cir.1995) ("A federal agency may adopt the seizure of property seized by another agency as related to illegal drug use or trafficking."); *United States v. $6,207.00 in U.S. Currency*, No. 2:08–CV–999, 2009 WL 2169167, at *7 (M.D.Ala. July 20, 2009) (ruling that the DEA may adopt a state seizure and the district court may assert in rem jurisdiction over the property even if state authorities turned the property

---

[1] *See, e.g.*, "DEA agents . . . are not authentic 'federal law enforcement officers.'"; "The way that case was handled [by the state court] was atrocious."; "These Troopers have been pamper[sic] and are spoiled."; "there is no expert in the world who can defend the seizure of this money and the State trooper's belief that he could simply turn these monies over to a DEA agent. What is worse, however, is the brazenness of the agents."; "Given it is for sure these DEA agents . . . have to be reeling here, we can have sympathy for them. But not these attorneys. For them, there is no excuse . . . their persistent arguments that there was an adoption, which is an outright fantasy they sold to the State Courts, is unforgiveable." (Doc. 8.)

7

over without legal authority to do so).

Here, the DEA's adoption of the currency was proper. On the same day that Miller was pulled over, the currency was turned over to the DEA. It was taken directly from the car and placed into DEA evidence bags. DEA Agents informed Miller that they were seizing it and, although it was housed at the Wilmington Post for two days, the DEA retrieved it, counted it, and deposited it into the Seized Asset Deposit Fund. This was all done within a week of Miller's arrest. Moreover, the adoption was authorized under Ohio law, which provides that no state agency shall transfer any seized property to a federal law enforcement agency unless the "value of the seized property exceeds one hundred thousand dollars . . . ." O.R.C. 2981.14(B). *See also Miller*, 2020-Ohio-3231 at ¶¶ 26-41.

Regardless, jurisdiction would still be proper here because this Court is the first court to assume jurisdiction over the currency. *See United States. v. Cunningham*, 520 Fed. Appx. 413, 415 (6th Cir. 2013). It is well established that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* (*citing Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935)). This is true even if the property was originally seized by state officers and held by the state prior to the United States ultimately taking possession. *U.S. v. $22,832.00 in U.S. Currency*, 2013 WL 4012712 (N.D. Ohio Aug. 6, 2013)) (*citing United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 660 (6th Cir. 2003) ("[t]he mere fact that the *res* was at one point in the state's possession does not imply that it was the basis of the state court's jurisdiction"). The Sixth Circuit has even gone as far as to say that

8

"even where the property is seized pursuant to a state search warrant, where the federal court is the only court attempting to exercise *in rem* jurisdiction over property and the state never institutes a forfeiture action, the federal court's exercise of jurisdiction is proper." *United States v. One Hundred Thirty-Four Thousand Nine Hundred Twenty Dollars ($134,920.00) in U.S. Currency*, 1994 WL 252702, at *3 (6th Cir. 1994) (*citing United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 44-5 (1st Cir. 1991)).

In this case, this Court is the first (and only) court to assume jurisdiction over the currency. The state of Ohio has never filed a forfeiture claim against the currency, nor is it (or any other state) attempting to exercise jurisdiction over it now. The only other claim against the currency was filed by Miller, himself, in Fayette County Common Pleas Court. But the state court dismissed Miller's action because it lacked subject matter jurisdiction. When Miller appealed, Ohio's Twelfth District Court of Appeals told him, again, that subject matter jurisdiction was only proper in federal court. By reference of this Order, Miller is now being told for the third time, by three separate courts, that subject matter jurisdiction is only proper in federal court.

Miller's attorney should be well aware of this outcome. Not only has he raised, and lost, this same argument three times in this matter alone, but he has also raised, and lost, this exact argument numerous times before. *See United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 661 (6th Cir. 2003); *United States v. $99, 500 in U.S. Currency*, 339 F. Supp. 3d 690, 700 (N.D. Ohio 2018); *United States v. $110,873.00 in U.S. Currency*, 159 F. App'x 649, 653 (6th Cir. 2005); *United States v. $22,832.00 in U.S. Currency*, No. 1:12 CV 01987, 2013 WL 4012712, at *2 (N.D. Ohio Aug. 6, 2013); *United States v. $677,660.00 in*

9

*U.S. Currency Crumpler*, No. 5:11 CV 770, 2012 WL 12887703, at *5 (N.D. Ohio Feb. 2, 2012); *United States v. $16,757.00 in U.S. Currency*, No. 1:10CV1450, 2010 WL 5662092, at *4 (N.D. Ohio Dec. 22, 2010) ("It is well-established that the Department of Justice policy directives are not binding and do not create privately enforceable rights."); *United States v. $16,757.00 in U.S. Currency*, No. 1:10-CV-1450, 2012 WL 1865419, at *1 (N.D. Ohio Apr. 12, 2012); *Abernathy v. Kral*, 305 F. Supp. 3d 795, 798 (N.D. Ohio 2018) (DEA agent was an authorized law enforcement officer under Ohio law); *Bradberry v. Ohio*, No. 1:11-1240, 2012 WL 275106, at *1 (N.D. Ohio Jan. 31, 2012).

In sum, Miller's argument is unavailing as this Court has exclusive *in rem* jurisdiction over the defendant currency.

## II.  Failure to State a Claim

Miller's Rule 12(b)(6) argument, though not fully developed, appears to propose that this matter should be dismissed because Miller's arrest, and the subsequent seizure of the currency, lacked probable cause.  Here, the Government is not required to plead facts in the complaint sufficient to demonstrate probable cause.  *United States v. One 1974 Learjet 24D*, 191 F.3d 668, 674 (6th Cir. 1999).  At trial, the Government will be required to establish by a preponderance of evidence that the currency was properly subject to forfeiture and had a "substantial connection" to an unauthorized drug sale. *United States v. Real Prop. 10338 Marcy Rd. Nw., Canal Winchester, Ohio*, 659 F. App'x 212, 216 (6th Cir. 2016).  And, as stated above, 18 U.S.C. § 983(a)(3)(D) prohibits the Court from dismissing a forfeiture complaint for lack of "adequate evidence at the time the complaint was filed to establish the forfeitability of the property." *Id*.  Instead, on a

motion to dismiss, the government need only state "sufficiently detailed facts to support a *reasonable belief* that the government will be able to meet its burden of proof at trial." Supplemental Rule G(2)(f) (emphasis added).

Accordingly, the Government has done so. When accepted as true, the complaint alleges the following facts that all support a "reasonable belief" the Government will be able to meet its burden of proof at trial: furtive movements by Miller and his passenger; the strong odor of raw marijuana; Miller's behavior, including his initial denial that marijuana was in the vehicle; Miller's active warrant out of Oregon for drug possession; the DEA's knowledge of Miller as a multi-kilogram cocaine and marijuana dealer; the presence of marijuana in the vehicle; the bulk amount of currency in the vehicle and the manner in which it was packaged; the suspicious, slow moving vehicle activity; a cell phone in the vehicle ringing multiple times from a number originating from California; an electronic money counter with what appeared to be marijuana residue on it; and a positive alert for the odor of narcotics on a locker that contained the currency by the trained, narcotics detection K-9 "Tao." (Doc. 1.) *See, e.g., $16,757.00 in U.S. Currency*, 2010 WL 5662092, at *3; *$22,832.00 in U.S. Currency*, 2013 WL 4012712, at *3.

## CONCLUSION

After careful review, it is crystal clear that this Court has jurisdiction over this action, and the Government's Complaint (Doc. 1) states a claim upon which relief can be granted. As such, Miller's Motion to Dismiss (Doc. 8) is **DENIED**. Furthermore, Miller's requests to have the currency returned and to have the Government pay his

11

reasonable expenses incurred by this litigation are also **DENIED**.

    **IT IS SO ORDERED.**

                                      UNITED STATES DISTRICT COURT
                                      SOUTHERN DISTRICT OF OHIO

                            By: _____
                                      JUDGE MATTHEW W. McFARLAND